IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEY ALLEN LEWIS,

    **Plaintiff,**

v.                                           CASE NO. 23-3088-JWL

J.J. CORTES, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

This matter is a civil rights action filed under 42 U.S.C. § 1983 by Plaintiff and state prisoner Jey Allen Lewis, who is currently being held at the Wyandotte County Detention Center (WCDC). Plaintiff filed his initial complaint on March 28, 2023, and the Court conducted the statutorily required initial screening of the complaint. On April 17, 2023, the Court issued a memorandum and order identifying certain deficiencies in the complaint and granting Plaintiff time to file an amended complaint that cured those deficiencies. (Doc. 5.) Plaintiff timely filed his amended complaint (Doc. 6), which the Court reviewed.

On May 2, 2023, the Court entered a second memorandum and order (the M&O) directing the officials responsible for the operation of the WCDC to prepare and submit a *Martinez* report. (Doc. 7.) The M&O provided that the Court "will screen the complaint after receipt of the report ordered herein and Plaintiff's response to that report." *Id.* at 2. The *Martinez* report (Doc. 13) was filed on September 7, 2023. Although Plaintiff was granted to and including October 9, 2023 to file a reply to the *Martinez* report (*see* Doc. 12), the Court has not received a reply from Plaintiff. Thus, the Court will screen the amended complaint in light of the *Martinez* report and will direct

1

Plaintiff to show cause, in writing, why this matter should not be dismissed for failure to state a claim upon which relief can be granted.

## I. Nature of the Matter before the Court

In the amended complaint, Plaintiff names as Defendants Sergeant J.J. Cortes, Deputy E. Black, and Deputy F. Carlon, all of whom work at the WCDC. (Doc. 6, 1-3.) As the factual background for this action, Plaintiff alleges that on February 22, 2023, he requested medical attention and, after his initial request was refused, Defendants put him into restraints and took him to I-pod, which is the medical pod at the WCDC. *Id.* at 2, 4. Plaintiff asked several times what was going on, but no one answered him. *Id.* at 2.

Once they arrived at I-pod, Plaintiff was told to strip, even though he was still restrained, and then Defendant Cortes ordered Defendants Black and Carlon to strip Plaintiff. *Id.* at 2, 4. Defendant Carlon put his hand around Plaintiff's throat, restricting his breathing, and Defendant Black put his forearm on the back of Plaintiff's neck and slammed him onto the ground. *Id.* at 4. Defendant Carlon then smashed Plaintiff's head with his right forearm. Over the next two to three minutes, Plaintiff asked twice that Defendant Carlon remove his hand from Plaintiff's neck, and Defendant Cortes said, "'If you can say you can't breath[e], then you can.'" *Id.* at 2. Plaintiff's restraints were not removed during the duration of the incident, which Plaintiff alleges lasted for 30 minutes. *Id.* Plaintiff suffered pain in his right knee and a torn ligament in his left shoulder. *Id.*

In the sole count of the amended complaint, Plaintiff alleges the violation of the Eighth Amendment's1 prohibition against cruel and unusual punishment, based on the facts alleged above. *Id.* at 4. As relief, Plaintiff requests compensatory damages in the amount of $500,000.00. *Id.* at 6.

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss "the complaint, or any portion of the complaint," that "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

When, as here, the Court orders a *Martinez* report to assist with the screening process, the *Martinez* report "is treated like an affidavit, and the Court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall*, 935 F.2d at 1111 (citation omitted). Rather, "[t]he purpose of the Martinez report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v.* Estes, 829 F.2d

4

1005, 1007 (10th Cir. 1987). In other words, "[i]n determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). Thus, although the Court may consider the *Martinez* report to aid it "in fleshing out possible legal bases of relief" when the Court screens a case under 28 U.S.C. § 1915A(b)(1)-(2), it will not consider the *Martinez* report "to resolve material factual issues." *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

## III. DISCUSSION

Even liberally construing the amended complaint, it is subject to dismissal in its entirety because it fails to allege sufficient facts to support a plausible claim that Plaintiff was subjected to cruel and unusual punishment, which is the sole claim in this matter. As noted in the M&O, it is unclear whether at the time of the events that led to this matter Plaintiff was a pretrial detainee or a convicted prisoner. (*See* Doc. 7, p. 2 n.1.) This is important because the elements of a claim of unconstitutional excessive force are different for pretrial detainees and convicted prisoners. Under either legal standard, however, Plaintiff has failed to state a claim on which relief can be granted.

First, the Court will examine the amended complaint under the assumption that Plaintiff is was a convicted prisoner at the time of the relevant events. The Eighth Amendment[1] prohibits the cruel and unusual punishment of convicted prisoners, which can involve the use of excessive force. *See Geddes v. Weber County*, 2022 WL 3371010, *5 (10th Cir. Aug. 16, 2022) (unpublished) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010)). When a convicted prisoner brings an Eighth Amendment excessive force claim, he or she must allege facts that, if taken as

---

[1] Although the Fourteenth Amendment incorporates the Eighth Amendment's protections to prisoners convicted in state courts, claims of cruel and unusual punishment—including those based on excessive force—are often referred to as Eighth Amendment claims.

true, plausibly support two conclusions: "(1) . . . the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) . . . that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). These are often referred to as the "two prongs" of an Eighth Amendment excessive force claim; the first is an objective inquiry and the second is a subjective one.

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Not "every malevolent touch by a prison guard gives rise to a federal cause of action."); *El'Amin v. Pearce*, 750 F.2d 829, 831 (10th Cir. 1984) (holding that a jailer's use of force against a prisoner is not always a constitutional violation). This is because "[t]he objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The Court need not further address the objective component, however, because even assuming solely for the sake of argument that Plaintiff has sufficiently pled a plausible claim on that component of the Eighth Amendment test, he has failed to do so with respect to the subjective part of the test. In other words, even if all of the facts alleged in the amended complaint are taken as true, they fail to state a plausible claim that Defendant Cortes, Black, or Carlon acted with the culpable state of mind required for an Eighth Amendment violation.

Plaintiff asserts that after Defendants took him to I-pod, they used force to strip him in order to forcefully remove his clothing without removing his restraints or explaining "what [was] going on." (Doc. 6, p. 2.) This does not, by itself, demonstrate that any Defendant was using force maliciously and sadistically for the very purpose of causing harm. Indeed, Plaintiff acknowledges in his amended complaint, that he "was never compliant" with Defendants' orders. *Id.* And when Plaintiff's allegations are considered in light of the additional—but not contradictory—

6

information in the *Martinez* report that reflects Defendants used force only after Plaintiff refused to comply with verbal commands and became physically resistant, it appears that the force was used in a good faith effort to maintain or restore discipline. (*See* Doc. 13-1, p. 2, 5, 9.) Thus, Plaintiff has failed to state a claim of unconstitutionally excessive force under the Eighth Amendment.

As noted above, if Plaintiff was a pretrial detainee at the time of the relevant events, a different test applies to determine whether he has stated a plausible excessive force claim. Instead of the Eighth Amendment, which protects convicted prisoners from cruel and unusual punishment, the Fourteenth Amendment's "'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *See Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989)). Unlike the Eighth Amendment test for excessive force, the Fourteenth Amendment test does not include a subjective prong. Thus, when a pretrial detainee brings a Fourteenth Amendment excessive force claim, he or she must allege facts that, if taken as true, plausibly support the conclusion "that the force purposely or knowingly used against him [or her] was objectively unreasonable." *See Kingsley*, 576 U.S. at 396-97; *see also Brown v. Flowers*, 974 F.3d 1178, 1182-83 (10th Cir. 2020) (holding that "to make out a constitutional violation [of excessive force, a pretrial detainee] must only demonstrate that [the prison official's] conduct 'was objectively harmful enough to establish a constitutional violation'").

Force may amount to unconstitutional punishment of a pretrial detainee if it "consist[s] of actions taken with an 'expressed intent to punish.'" *Kingsley*, 576 U.S. at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). In the alternative, the pretrial detainee may "show[] that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the

7

actions 'appear excessive in relation to that purpose.'" *Kingsley*, 576 U.S. at 398 (quoting *Bell*, 441 U.S. at 561). To determine if a pretrial detainee has pled a plausible claim of objectively unreasonable force, the Court also considers "the 'facts and circumstances of each particular case . . . from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Kingsley*, 576 U.S. at 397. This analysis may include considering factors such as the following: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of [any] security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among others. *Id.*.

Even liberally construing the amended complaint and taking all the facts therein as true, Plaintiff has not alleged sufficient facts to state a plausible claim of excessive force that violated the Fourteenth Amendment. Plaintiff does not allege in the amended complaint that any Defendant expressed an intent to punish Plaintiff via the force used against him. The force appears to have been rationally related to the legitimate nonpunitive governmental purpose of maintaining order and enforcing safety procedures that require inmates on suicide watch to remove their clothing and wear a "suicide smock." (*See* Doc. 13-1, p. 5.) Moreover, the force does not appear excessive in relation to that purpose, considering that Plaintiff refused to comply with Defendants' directives and actively resisted. Considering all of the relevant factors and circumstances, Plaintiff has failed to state a plausible claim that his Fourteenth Amendment right to be free from punishment were violated by the force used in the relevant events.

**IV. Response Required**

To avoid dismissal of this matter, Plaintiff is required to show good cause why his complaint should not be dismissed for failure to state a claim on which relief can be granted, as

explained above. If Plaintiff does not file within the prescribed time a written response to this order, this matter will be dismissed without further prior notice to Plaintiff.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 13, 2023,** in which to show good cause, in writing to the undersigned, why this matter should not be dismissed without prejudice for the reasons stated herein.

**IT IS SO ORDERED**.

Dated October 13, 2023, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
